## SYNDICATE PRINTING COMPANY v. THOMAS E. CASHMAN and Others.[1]

October 20, 1911.

Nos. 17,443—(182).

**Inconsistent statutes in code.**

Where two inconsistent statutes relating to the same subject-matter are

[1]Reported in 132 N. W. 915.

both incorporated into a general revision, the court will, in construing them, inquire as to the date of the respective enactments, and give effect to the latest expression of the legislature.

**Same — approved on same day.**

Where two inconsistent statutes are approved on the same day, it is presumed that they were approved in their numerical order.

**"Farmers' Institute Annual" — publication.**

These rules applied to R. L. 1905, § 1453; and R. L. 1905, § 2272, and *held* that the provisions of the former section, as enacted in Laws 1903, c. 221, must prevail over the inconsistent provisions of the latter section, enacted in chapter 269, Laws 1897, as amended by chapter 203, Laws 1903.

**Same.**

The duty and power to publish the "Farmers' Institute Annual," and to contract for the printing thereof, rests with the board of administration of farmers' institutes, and not with the state printing commission.

Action in the district court for Ramsey county to enjoin defendants and their agents from procuring or permitting or contracting for the printing or publication of the Minnesota Farmers' Institute Annual No. 24, save by plaintiff under its award and contract with the state printing commission. From an order, Hallam, J., denying plaintiff's motion for a temporary injunction during the pendency of the action, it appealed. Affirmed.

*Walter L. Chapin,* for appellant.

*George T. Simpson,* Attorney General, and *Lyndon A. Smith,* Assistant Attorney General, for respondents.

BUNN, J.

This action was brought to enjoin defendants, who are the members and superintendent of the board of administration of farmers' institutes, from contracting for the printing of the "Farmers' Institute Annual."

The case came before the trial court on the application of plaintiff for a temporary injunction, and was heard upon the complaint and affidavits. The trial court denied the application, and plaintiff appealed.

The facts are as follows: Plaintiff holds a contract, made with

the state printing commission, for the printing of the state comprised in class 3 of section 2267, R. L. 1905, during the year ending July 31, 1912. Defendants, on July 21, 1911, advertised for bids for printing fifty thousand copies of the "Farmers' Institute Annual No. 24," and proposed to hold a meeting on August 10, 1911, and to then award a contract for such printing. The question involved is whether the printing of this "Annual" is embraced within class 3, section 2267, R. L. 1905, and therefore to be done under plaintiff's contract with the state printing commission, or is it to be published by defendant board under R. L. 1905, §§ 1452–1456? It is necessary to examine the legislation relating to the powers of the state printing commission and of the defendant board with reference to the publication of the "Annual."

Since 1866 the secretary of state, the state treasurer, and the state auditor have constituted the printing commission. G. S. 1866, c. 5; R. L. 1905, §§ 2265–2267. Section 2267 divides the state printing into five classes, and provides that each class shall be let in a separate contract to the lowest bidder; class 1 embraces legislative bills and resolutions, ordered printed by either house; class 2, journals of the Senate and House; class 3, "all other reports and documents ordered printed in pamphlet or book form by either branch of the legislature, or authorized or required by law to be so printed, including the volumes of executive documents and the legislative manual." Section 2272 provides that "the following documents may be published by the printing commission in the third class, and in such quantity and form as it shall direct," and among the documents named is the Minnesota farmers' institute annual. Section 2273 provides that all reports of state boards and officials, not enumerated in section 2272, and all printing necessary for state purposes, and not furnished by the printing commission, may be published by such bodies or officials, and be paid for out of the appropriations made for their support.

The law relative to the state board of administration of farmers' institutes is found in sections 1452–1456, R. L. 1905. The board consists of six members, three regents of the state university, and the presidents, respectively, of the State Agricultural Society, the

State Dairy Association, and the State Horticultural Society. Section 1453 directs that the board shall "publish annually a handbook of practical agriculture entitled 'Farmers' Institute Annual,' for free distribution among the farmers of the state. The expense of this publication shall be met from the annual appropriation hereinafter made." By section 1456, $18,000 is "annually appropriated for the purposes of such institutes."

We thus have two different laws; one providing that the state printing commission may publish the Annual; the other that the board of administration shall publish it. Assuming that section 2272 is mandatory, the laws are in direct conflict with each other. The rule is that, where two inconsistent laws enacted prior to a revision are incorporated in such revision, the court will inquire as to the dates of the original enactments, and give effect to the latest expression of the legislature. State v. District Court of Hennepin County, 107 Minn. 437, 120 N. W. 894.

We must therefore look to the history of these laws to determine which is the latest expression on the subject. That part of section 2272, providing that the printing commission may publish the Annual, was originally in section 8, c. 269, p. 496, Laws 1897. This section provided that the board of administration of farmers' institutes "shall turn over to said printing commission the amount now appropriated by law for the printing of said Minnesota Farmers' Institute Annual." By chapter 205, p. 282, Laws 1901, this section was amended in a respect not material here, and again so amended by chapter 203, p. 308, Laws 1903.

The first law by which the board of administration of farmers' institutes was authorized to publish the Annual was chapter 156, p. 295, Laws 1891. It was there provided that the board should cause such Annual to be published, the expense to be paid from the appropriation made in the act. Chapter 269, p. 496, Laws 1897, provided that the board should turn over to the printing commission the "amount now appropriated by law" for printing the Annual. But this provision of chapter 269, Laws 1897, though retained in chapter 203, p. 308, Laws 1903, does not appear in section 2272 of the Revised Laws. By chapter 221, p. 323, Laws 1903, approved

115 M.—29.

April 14, 1903, the same day on which chapter 203 was approved, it is again provided that the board of administration of farmers' institutes shall cause to be published a "Farmers' Institute Annual, and that the expense shall be met out of the appropriation made by the act." Chapter 221, though approved on the same day as chapter 203, is presumed to be the later enactment, as it is presumed that the acts were approved in their numerical order. If, therefore, the two acts are inconsistent, chapter 221, being the latest expression of the legislature on the subject, operates as a repeal by implication of the prior inconsistent law, and must be given effect.

The conclusion that the legislature did not intend to change the provision giving the publication of the Annual to the board, as found in chapter 221, p. 323, Laws 1903, is strengthened by the fact that chapter 203, p. 308, Laws 1903, only purports to amend one section of chapter 269, p. 496, Laws 1897, in a particular in no way material, while chapter 221, p. 323, Laws 1903, purports to be in itself a complete act relating to farmers' institutes, and not an amendment of a prior act. It is fair to assume that in passing chapter 203 the legislature had only in mind the particular change in the prior law, and did not consider those parts of the prior law that were left unchanged.

Plaintiff contends that the provision that defendant shall publish the Annual and pay the expense thereof out of its appropriation does not mean that defendant shall cause the printing to be done. But we think that "publication" in this case includes "printing," as well as compiling and distribution. Indeed, the word "publish," and not "print," is used in the section under which plaintiff claims that the printing commission has the printing of the Annual. It is also significant that the legislature, in chapter 269, p. 496, Laws 1897, provided that the board of administration should turn over to the printing commission the amount appropriated for the "printing" of the Annual. The fact that the acts of 1901 and 1903 provided that the board should "cause" the Annual to be published, instead of providing that it should "publish" it, would, if it stood alone, lend color to the argument that the actual publication or printing was to be done by the printing commission.

But the force of this argument is lost when we consider the provision that the expense is to be paid out of the board's appropriation, and the fact that the revision retained this provision, while it omitted the provision of chapter 269, p. 496, Laws 1897, requiring the board to turn over to the commission the amount appropriated by law for the printing of the Annual. Further, the revision eliminated the words "cause to be published," and said "shall publish."

We hold that the intent of the legislature, as indicated by the various laws referred to, was that the board of administration of farmers' institutes should publish the Annual and contract for the printing thereof, and that the state printing commission did not and could not make a contract for printing such Annual. We have assumed that R. L. 1905, § 2272, is mandatory and therefore in conflict with R. L. 1905, § 1453; but we have not so decided. Of course, if section 2272 is permissive only, the same result is reached in this case.

We have carefully considered the brief and arguments of counsel, not only on the points we have discussed in this opinion, but on the other points made, and find no ground for reversing the order of the trial court.

Order affirmed.